UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELO STORNELLO, #264946,
WILLIAM HAYS, #175895,
CHRISTOPHER URBAN, #206152,
DAVID LINDENSMITH, #488856,                     Case No. 13-13674
EMANUEL HUNT, #484205,
RANDY SMITH, #408521, and                       Hon. Bernard A. Friedman
ROBERT COPELAND, #324837,                       Mag. Judge Laurie J. Michelson

          Plaintiffs,
v.

DANIEL HEYNS,

          Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' EX PARTE MOTION FOR PRELIMINARY INJUNCTION [8] AND ORDER TO DENY PLAINTIFF STORNELLO'S MOTION TO AMEND THE COMPLAINT [15]

This is a purported class action in which six state prisoners currently incarcerated at the

Parnall Correctional Facility, who wish to continue receiving kosher meals, allege that the Michigan

Department of Correction's ("MDOC") recent implementation of a vegan menu for all religious

diets pursuant to MDOC Policy Directive 05.03.150 violates their constitutional rights. All pretrial

matters have been referred to this Court. Presently before the Court is Plaintiffs' two-paragraph Ex

Parte Motion for Preliminary Injunction. (Dkt. 8.) Because Plaintiffs' motion makes no attempt to

demonstrate a substantial likelihood of success on the merits and fails to demonstrate irreparable

harm, this Court RECOMMENDS that the motion be DENIED.

## I.      BACKGROUND

In addition to seeking monetary relief, pro se Plaintiffs Angelo Stornello, William Hays,

Christopher Urban, David Lindensmith, Randy Smith, and Robert Copeland ("Plaintiffs"), inmates

at the Parnall Correctional Facility ("SMT"), filed this lawsuit to prevent Defendant MDOC Director

Daniel Heyns ("Defendant") and his agents from implementing the "vegan diet" on Kosher

participants.  (Dkt. 1, Compl. at 5, 9.)

While Plaintiffs refer to themselves, and other alleged class members, as "kosher

participants" (*id*. at 5), the Complaint contains no facts discussing or explaining the Plaintiffs'

individual backgrounds, religious beliefs, or entitlement to Kosher meals.  Plaintiffs' Complaint

simply suggests that there are at least three menu options within MDOC: the religious menus

(specifically the Kosher menu), the general population menu, and the new vegan menu.  (*Id*. at 6.)

Plaintiffs allege that on July 26, 2013, Defendant approved a new Policy Directive 05.03.150

and "the Kosher participants at SMT were called to Food Service, where [they] were informed that

the changes to [Policy Directive] 05.03.150 would require [them] to become vegan to comply with

[their] religious beliefs, pursuant to section PP . . . , and that as of [September 29, 2013, they] would

no longer receive either meat or dairy products."  (*Id*. at 6.)  More specifically, the revised MDOC

Policy Directive provides in pertinent part:

> PP. The Department offers a religious menu to meet the religious
> dietary needs of prisoners. The Department will begin offering a
> Vegan menu which will replace all currently approved religious
> menus on the following dates for the listed facilities:
>
> 1. The week of September 15, 2013: Newberry Correctional Facility,
> Macomb Correctional Facility, Baraga Correctional Facility, Ionia
> Correctional Facility, Central Michigan Correctional Facility.
>
> 2. The week of September 22, 2013: Alger Correctional Facility,
> Chippewa Correctional Facility, Carson City Correctional Facility,
> St. Louis Correctional Facility, Muskegon Correctional Facility,
> Earnest C. Brooks Correctional Facility.
>
> 3. The week of September 29, 2013: Oaks Correctional Facility,
> Parnall Correctional Facility, Lakeland Correctional Facility,

> Women's Huron Valley Correctional Facility (Forensic Center).
>
> The Vegan menu shall comply with Kosher and Halal religious tenets. A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner. All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals". The Deputy Director or designee shall determine at which facilities religious meals will be offered.

*See* Policy Directive 05.03.150 § PP (effective date July 26, 2013).

In Count I of the Complaint, Plaintiffs allege that these "[r]ecent changes to the Kosher diet violate the equal protection clause of the 14th Amendment of the United States by persecuting and discriminating against Kosher participants." (Compl. at 7.) Plaintiffs allege that they are deprived of certain food items served that are made available to the general population and that they will now be forced to become vegan while the general population will still receive a choice of meat or non-meat meals. (*Id*. at 7.) Plaintiffs further allege, in Court II, that the dietary changes violate the Religious Land Use and Institutionalized Persons Act (RLUIPA) because "[r]equiring kosher participants to give up both meat and dairy products in order to exercise their religious beliefs for the duration of their confinement is clearly burdensome." (*Id*. at 8.)

Plaintiffs filed this lawsuit on August 27, 2013, before the new Policy Directive and resulting menu changes went into effect at SMT the week of September 29, 2013. On October 9, 2013, Plaintiffs filed a Motion to Amend the Complaint that simply states they have now received the actual menu being enforced by Defendant and it violates their rights under the First Amendment, the Equal Protection Clause, and the RLUIPA. (Dkt. 15.)

Plaintiffs' one-page Ex Parte Motion for Preliminary Injunction is equally devoid of analysis.

It simply states:

> Plaintiffs move this Honorable Court in the above-entitled action for a preliminary injunction restraining the defendant, and his agents, employees and attorneys (and those persons in active concert or participation with them) from implementing the "vegan diet" on Kosher Participants.
>
> This motion is based on the grounds that immediate and irreparable injury, loss, damage, and/ or discrimination will result to the plaintiffs by reason of the threatened action of the defendant. If this preliminary injunction be granted, the injury, if any to the defendant herein will be inconsiderable.

(Dkt. 8, Pls.' Mot. for Prelim. Inj.)  Defendant was only recently served and thus, has not responded to the motion.

## II.   ANALYSIS

### A.   Preliminary Injunction Standard

In determining whether to grant a temporary restraining order or preliminary injunction, a court considers the following four factors: (1) whether the plaintiff is likely to succeed on the merits, (2) whether the plaintiff is likely to suffer irreparable injury absent an injunction, (3) whether the balance of equities tips in the plaintiff's favor, and (4) whether the public interest would be served by granting the injunction.  *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).  The four preliminary injunction factors are "'factors to be balanced, not prerequisites that must be met.'"  *Michael v. Futhey*, No. 08-3932, 2009 U.S. App. LEXIS 28217, 2009 WL 4981688, at *17 (6th Cir. Dec. 22, 2009) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997)).  Notwithstanding this balancing approach, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry.  *See Rhinehart v. Scutt*, No. 10-100006, 2010 U.S. Dist. LEXIS 96837, 2010 WL 3701788, at *3

(E.D. Mich. Aug. 16, 2010) *report adopted by* 2010 U.S. Dist. LEXIS 96882, 2010 WL 3701787

(E.D. Mich. Sep 15, 2010).  Thus, "a finding that there is simply no likelihood of success on the

merits is usually fatal."  *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir.

2000); *see also NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989) (explaining that under

controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to

preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the

merits of his section 1983 action).

Plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and

his burden is a heavy one.  Injunctive relief is "an extraordinary remedy which should be granted

only if the movant carries his or her burden of proving that the circumstances clearly demand it."

*Overstreet v. Lexington-Layette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Winter*, 555

U.S. at 24.  Indeed, the "proof required for the plaintiff to obtain a preliminary injunction is much

more stringent than the proof required to survive a summary judgment motion."  *Leary v.

Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).  Further, where a prison inmate seeks an order

enjoining state prison officials, this Court is required to proceed with the utmost care and must be

cognizant of the unique nature of the prison setting.  *See Kendrick v. Bland*, 740 F.2d 432, 438, n.3

(6th Cir. 1984).

**B.     No Showing of Entitlement to Extraordinary Relief**

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not

"deny to any person within its jurisdiction the equal protection of the laws," which is essentially a

direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City

of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313

(1985). "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011).

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1, "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). It achieves this goal by prohibiting the government from "imposing a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person is in furtherance of a compelling governmental interest[,] and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "An action of a prison official 'will be classified as a substantial burden when that action forced an individual to choose between following the precepts of [his] religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hayes v. Tennessee*, 424 F. App'x 546, 554-55 (6th Cir. 2011) (quoting *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010)); *see also Adkins v. Kaspar*, 393 F.3d 559, 569-70 (5th Cir. 2004) (holding that a regulation constituted a substantial burden "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs").

The Policy Directive being challenged by Plaintiffs specifically provides that the new Vegan menu "shall comply with Kosher and Halal religious tenets" and any "prisoner who believes the

Vegan menu does not meet his/her religious dietary needs may request an alternative menu." Policy

Directive 05.03.150 PP.   In other words, "the controlling policy directive provides for two

safeguards: (1) all religious diets must satisfy the nutritional needs of the inmates, and (2) any

inmate who believes the provided meal is not in accord with his or her religious dictates may petition

the MDOC for an alternative meal." *Dowdy-El v. Caruso*, No. 06-11765, 2013 U.S. Dist. LEXIS

164893, *5 (E.D. Mich. Nov. 20, 2013).   Here, Plaintiffs fail to provide any information about the

meals being served pursuant to the Vegan menu other than a statement that they have reviewed the

menu and it violates their rights.   Nor do Plaintiffs explain how the meals fail to satisfy their

religious needs.   Moreover, Plaintiffs do not indicate that they requested an alternative meal, that

any such requests were denied, and/or the reasons for any denials.   Plaintiffs are simply speculating

that the Vegan menu will not comply with their Kosher diets.   Such speculation does not warrant

the grant of preliminary injunction relief.   *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22,

129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (rejecting the notion that a mere "possibility" of irreparable

injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary

relief [are required] to demonstrate that irreparable injury is likely in the absence of an injunction");

11A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure: Civil 2d § 2948 at 153-56

(West 1995) ("Speculative injury is not sufficient," and "a preliminary injunction will not be issued

simply to prevent the possibility of some remote future injury.   A presently existing actual threat

must be shown.").

        Plaintiffs' motion also fails to address whether MDOC, through the new policy directive, has

intentionally favored (or disfavored) inmates based on their religious beliefs.   *See Patel v. U.S.*

*Bureau of Prisons*, 515 F.3d 807, 815-16 (8th Cir. 2008) (concluding that prisoner's equal protection

claim failed because he had not shown that the prison's decision to serve Kosher entrees and not

Halal entrees was motivated by intentional or purposeful discrimination).   Again, the express

language  of the Policy Directive indicates that it complies with Kosher and Halal religious tenets.

This suggests an intent to accommodate Plaintiffs' religious beliefs, not to discriminate against

Plaintiffs on the basis of religion or to impose a substantial burden on their religious beliefs.

## III.    CONCLUSION

For the reasons set forth above, it cannot be concluded, at this time, that Plaintiffs have

established "a substantial likelihood of success on the merits" or irreparable harm from MDOC's

implementation of a Vegan menu pursuant to Policy Directive 05.03.150 PP.   Thus, the Court

**RECOMMENDS** that Plaintiffs' Ex Parte Motion for Preliminary Injunction (Dkt. 8) be **DENIED**.

Plaintiff Stornello's Motion to Amend the Complaint (Dkt. 15) also fails to adequately set

forth the substantive amendments Plaintiff is seeking to make and does not attach a proposed

amended pleading.  The motion provides no information about the "actual menu being enforced by

the Defendant" (*id.*, ¶ 1) or how that menu violates the Plaintiffs' constitutional rights or rights under

RLUIPA.   Thus, the motion is **DENIED WITHOUT PREJUDICE**.

## IV.    FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation

within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*,

474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States*

*v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections,

but failing to raise others, will not preserve all the objections a party may have to this Report and

Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

Regarding this Court's Order on Plaintiff's Motion to Amend, the attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen days from the date of receipt of a copy of this order to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: December 5, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 5, 2013.

s/Jane Johnson
Deputy Clerk